(C. D. 821)

E. H. Bailey & Co. *v.* United States

United States· Customs Court, Third Division

(Decided December 16, 1943)

*Jordan & Klingaman* (Edward F. Jordan of counsel) for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*Joseph B. Brady* and *Frank X. O'Donnell, Jr.*, special attorneys), for the defendant.

Before Cline, Keefe, and Ekwall, Judges; Ekwall, J., not participating

Keefe, Judge: In this action the plaintiff seeks to recover certain customs duties assessed upon five shipments of wet salted steer hides imported from Argentina, claiming that the amount of duty charged was excessive because it was based upon too great a weight, that duties should have been assessed upon the basis of the landed quantity, and that assessment of duty upon the basis of weight including so-called shrinkage was unlawful.

At the trial of this case counsel for the plaintiff moved in evidence the entries, numbered 690 and 956, the United States weigher's

returns of weight, the five consular invoices contained in the two entries and the summary sheets attached to each invoice, and rested.

The Government counsel stated that there was no dispute as to whether the weigher's returns properly reflect the weights found by them. However, as the Government felt that the invoice and entry papers in their present condition are ambiguous, as the prices per unit on the consular invoices have a line drawn through them and other prices have been inserted, and in view of the fact that the appraiser's returns were performed in his official capacity and he evidently intended to do something, counsel requested that the case be transferred to Philadelphia to allow the appraiser to explain his action. The request for transfer of the case was granted by the court.

Upon hearing at Philadelphia the Government failed to produce the appraiser to testify as to his action. However deputy collector Kilpatrick testified for the Government that he liquidated entry 690 containing three invoices and that entry 956 containing two invoices was liquidated by Liquidator Gehman, since deceased, who had used the same method as the witness in arriving at the value for duty purposes. He further testified that in determining the total value upon which duty was assessable he multiplied the net landed weight, as returned by the United States weigher in each shipment, by the appraised value.

Before setting out further the testimony of the deputy collector, we think it will be conducive to the clarity of the situation here presented to review the action of the customs officials as presented by the official papers in evidence before us. An inspection of the papers discloses that the action of the appraiser was the same in each of the five invoices covered by the two entries in question. Entry 690, invoice numbered 3159 covering 3,941 steer hides, was entered as weighing 213,434 pounds. The weigher reported the net quantity as 200,518 pounds. Upon customs Form 6417, "Summary of Entered Value, Examination, and Appraisement," the report of the appraiser discloses that the merchandise was examined on September 1, 1936. In the column marked "Appraised" appears a check mark in red ink. In the "Advisorily classified" column there is also a check mark in red ink. The summary sheet in that portion signed by the appraiser, bearing the foregoing notations, also states the following:

The examination and appraisement of the merchandise covered by this invoice has been made in accordance with the law, and the facts as found are set forth below. (A check mark (✓) indicates that appraisment, classification, or quantities are as entered or that packing charges are believed to be correct.)

\* \* \* \* \* \* \*

Abbreviations.—Correct, "C"; advanced, "Adv."; reduced, "Red."; rate advanced, "R. A."; rate reduced, "R. R."; excess quantity, "E"; shortage in

quantity, "S"; not legally marked, "N. L. M."; importer's certified value, "I. C. V."; warehouse, "W"; prohibited, "P."

According to the above, the appraisement report of the appraiser informs the collector that the appraised values are as entered and that the classification is as entered. The columns marked "Quantities" and "Dutiable packing charges" bear no marks or notations of any kind.

Turning to the invoice we find that the unit price per 100 kilos as invoiced is $70 Argentine paper. A line in red ink is run through the $70 and above it, in red ink, appear the figures "$74.5089." There is no other notation whatever upon the invoice, except a check mark in red ink appearing under a pencil notation of "Par 1530–A–10%" and also in pencil "200,518 lbs." the weight reported by the weigher. Each of the other four invoices is identical, except that there is a variance in the unit values and also the red-ink values written above the invoice figures. Upon one invoice, however, the importer attached a slip of paper, reducing the invoice value for entry purposes to make market value. Upon this slip of paper the unit value has been crossed out in red ink and figures appear above it, also written in red ink, nothing appearing thereon to indicate who placed the same there or the reasons therefor. Upon the invoice itself nothing appears except the invoice figures relative to the unit value.

Relative to his interpretation of the appraiser's action, the witness testified as to the first invoice with entry 690 that he used the landed weight of 200,518 pounds reported by the weigher and applied that weight against the appraised value of $74.5089 Argentine paper pesos per hundred kilos; that the appraiser did not check the invoice as approving of the entered value, "he merely checked it and said it was appraised."

Judge DALLINGER: Do you understand the question please, whether the check mark put on the summary sheet means, in your interpretation and understanding, means simply that the merchandise is appraised or not appraised at the entered value, is that right?

The WITNESS: In liquidating we consider it appraised, and even though it was marked on there "advanced" it would call our attention to the fact it had been advanced at the time.

Judge DALLINGER: Is there anything on there to show it had been advanced?

The WITNESS. The invoice itself.

By Mr. KLINGAMAN:

X Q. Tell us what it is that you relied on for that purpose. What is there on the invoice to indicate to you the value has been advanced?—A. The fact the unit price is crossed out, and the appraiser's price is put in, in red ink on the invoice.

\*   \*   \*   \*   \*   \*   \*

X Q. Your answers would be the same with reference to the other invoices, where the value has been changed in red ink without any statement that there is any addition to make market value?—A. That is right. (Record pp. 15 and 16.)

From the foregoing summary of the evidence it is clear that the duties were not based upon a value derived from the landed quantity of hides multiplied by the appraised value. The collector by his calculation of the value upon which to base his assessment of duty has endeavored to correct the errors which he considered the appraiser had made in making his return of value, and in so doing has attempted to appraise the value himself, contrary to statutory direction.

Article 778 of the Customs Regulations of 1931 provides:

Appraising officers will observe the following rules in making returns on invoices:

(a) The value returned by the appraiser should be in the unit of quantity in which the merchandise is usually bought and sold in the ordinary course of trade, subject to the usual commercial terms and should not be expressed as a total unless the total is the trade unit of value.

\* \* \* \* \* \* \*

(t) When the appraised value of the merchandise exceeds the entered value the method used in determining the value as provided in section 402 of the Tariff Act of 1930 shall be indicated by the following symbols:

F. M. V.—Foreign market value.

Ex. V.—Export value.

U. S. V.—U. S. value.

C. P.—Cost of production.

A. S. P.—American selling price.

(u) The appraiser shall make a return of each invoice on customs Form 6417.

(v) *If the appraised value be the same as the entered value, the signature of the appraising officer to the certificate on the summary sheet without any notations on the invoice will so indicate.*

(w) *The appraising officer will note only exceptions upon the summary sheet, in the various columns relating to value, rate, quantities, and dutiable packing charges.*

(x) *When there are no changes in the entered value, classifications, quantities, etc., and the action of only one examiner is involved, each column should be checked to indicate that proper action has been taken as expressed in the certification of the appraising officer.*

(y) When exceptions are noted, the cases returned correct should be marked "C" (correct) in addition to setting forth the exceptions expressed by the abbreviations set forth in the summary sheet. [Italics not quoted.]

Article 783 provides for appraisement where there is a loss in weight and a corresponding increase in value as follows:

Art. 783. Loss of weight—Increase in value.—When merchandise subject to an ad valorem rate of duty has decreased in weight by reason of evaporation or otherwise, and the value of the unit of quantity has correspondingly increased, the appraiser should appraise the merchandise in the condition in which imported and such appraisement shall not be deemed an advance in value for the purpose of assessing additional duty.

In view of the evidence before us and the foregoing regulations, the merchandise herein was appraised as entered, and the collector in attempting to adopt a value other than the entered value as the value upon which duties were to be based exceeded his authority.

The collector has his remedy in an appeal to reappraisement when he finds that the appraiser has erred in his appraisement. No such appeal was taken in this case.

In *Loudon* v. *United States*, Reap. Dec. 5731, this court held that the only value upon which the collector may base his assessment of duties is the value found by the appraiser, even though the value returned by the examiner might have been higher, and the court there pointed out that the action of the appraiser as shown on the "Summary Sheet" is the only action taken by the appraiser and constitutes his appraisement of the merchandise, irrespective of notations upon the invoice to the contrary.

In the case of *Stone & Downer* v. *United States*, Abstract 44001, the court observed that a statement appeared upon the consular invoice that the "Appraised unit of value is total net invoice value divided by landed weight." There was no indication who placed the notation there, it being neither signed nor initialed. The "Summary Sheet," however, indicated that the merchandise was appraised as entered. The court there stated that the official notations of the appraising officers upon the summary sheet indicated that the merchandise was appraised as entered, and it was held that the entered unit value, as returned by the appraiser, multiplied by the landed weight should be used as a basis for computing duties.

In his brief counsel for the Government brushes aside the obvious fact that the collector has used an erroneous value in calculating the value for duty purposes, and contends that as the record established that the liquidations were based on the net landed weights rather than on the invoiced weights, judgment should be entered in favor of the Government, further maintaining that evidence establishing that the collector had based his assessment of duty upon other than the appraised values, admitted over Government objection, should be stricken from the record, first, because the correctness of the appraised values found by the appraiser cannot be attacked by protest, and second, that the protest contains no language which in any way indicates that the plaintiff was dissatisfied with the methods adopted by the appraiser in arriving at the appraised unit values; that the collector merely adopted the appraiser's valuations and applied them to the landed weights, and no question of shrinkage entered into or had any effect on his actions.

The protest herein claims that the amount of duty charged was excessive because it was based upon too great a weight, and that the duties should have been based upon the landed weight rather than the invoice weight. However, as it developed at the trial, the collector had used the landed weights as his basis of duties, according to his statement, but instead of using the appraised value he used some other figures he found upon the invoices. All that the plaintiff knew

before the trial was that a multiplication of the appraised value by the invoice weights would equal the value upon which duty was based. The effect of the collector's action was the same as though he had actually acted as claimed by the plaintiff. In all events, the amount of duties charged was excessive because of an erroneous computation of the collector. In the filing of protests, "it is not essential that the importer shall in the protest 'hit the bird in the eye.' But it is essential that he state his claim with such reasonable clearness and certainty as to acquaint the collector with the real ground of his complaint." See *Lichtenstein* v. *United States*, 1 Ct. Cust. Appls. 79, T. D. 31105. The protest here is certainly sufficiently specific to inform the collector of the nature of the claim, and the record presented sustains the claim that the collector, in effect, assessed duty upon an item of "so-called shrinkage." The importer had no reason to attack the values found by the appraiser nor was he interested in the methods adopted by him in arriving at the appraised values, inasmuch as the merchandise was appraised as entered. We find the evidence objected to was properly admitted by the court and that the evidence fully supports the claims made.

For the reasons stated judgment will be rendered in favor of the plaintiff directing the collector to reliquidate the entries assessing duty at 10 per centum ad valorem under paragraph 1530 (a) upon the basis of value derived from a multiplication of the net landed weight by the appraised value, which is the same as the entered value.